Morris Collins et al., Appellants, *v.* John Carlile et al., Appellees.

### APPEAL FROM MORGAN.

A mortgage taken to secure future advances is valid, although it does not show upon its face the real character of the transaction. In such a case the mortgagee can only recover the amount actually due at the date of the sale of the equity of redemption.

A bill of foreclosure, although it does not show the real consideration for, or the precise amount due upon the mortgage, will authorize a decree, although the proofs may show a less sum to be due than was claimed, or a state of facts not averred in it, if these facts are not incompatible with the allegations of the bill.

Carlile, then of Bethel, Morgan county, at St. Louis, on the 2d November, 1847, made his note to complainants at three months' date, for $500, to which was attached the following memorandum: "This note of John Carlile is left as collateral security, it being mentioned in a mortgage on his effects, &c., Mr. C. will return the mortgage as soon as recorded at Jacksonville." On the same day, and to secure the note, Carlile executed a mortgage conveying to the complainants a lot in Bethel valued at $250, and certain personal property, which was duly recorded 24th January, 1848.

Carlile then made the following bills for merchandise with the complainants, which were closed by notes and paid at sundry times, to wit:— November 3d, 1847, $279.88. February 22d, 1848, $425.56. May 1st, 1848, $380.19. July 3d, 1848, for $503.55 closed by note at four months' date, and paid at several dates in 1849, except the sum of $105.55 and interest. September 23d, 1848, for $313.07, closed by note at 4 months' date.

February 9th and 10th, 1849, for $110.04, closed by note at sixty days, 213.18, closed by note for $150 at sixty days, the three last notes and interest being wholly unpaid.

The complainants filed bill to foreclose the mortgage, to the September term, 1849, of the Morgan Circuit Court, when Carlile was indebted to them in the premises, upwards of $700.

At the special November term, 1849, three of the appellees filed their answer, claiming title to the Bethel lot by virtue of a title-bond executed by Carlile on the 17th November, 1848, (recorded 15th June, 1849,) conditioned for payment of purchase-money $275 in three promissory notes, amounts not specified, to mature, one 1st March, 1849, and two 1st March, 1850.

Said appellees, on the final hearing of this cause, produced and proved said title-bond, as also a cancelled note for $100, for first instalment of purchase-money that matured 1st March, 1849.

On the 29th November, 1849, complainants filed replication to aforesaid answer, and obtained decree *pro confesso* against Carlile.

On the same day said three appellees filed their cross-bill against complainants, calling on them to discover the consideration of the $500 note, state of accounts, payments, &c., by Carlile.

Complainants filed answer to cross-bill, to which said appellees excepted, and the exceptions were sustained.

On the 6th April, 1850, complainants filed further answer to cross-bill, in which they say, "that the true consideration of said note in the bill mentioned, is and was, goods to be sold to the said John Carlile, and as collateral security of any balance that he might ultimately owe said complainants, which balance when they filed their bill in this cause, amounted, after the allowance of all just offsets and discounts, to the sum of $702. Complainants give a full account of all their dealings with Carlile.

Said appellees filed exceptions and replication to this amended answer, and the cause coming on to be heard finally, 20th March, 1851, bill of complainants was dismissed, and they were decreed to pay costs of the case.   WOODSON, Judge, presiding.

D. A. SMITH, for appellants.

The only question in the case is, whether, on the 17th November, 1848, Carlile was so indebted to complainants, by virtue of the $500 note, mortgage, and dealings, as that they could foreclose it for Carlile's indebtment (which then, without interest, amounted to the sum of $418.62) against the said appellees, as incumbrancers of that date, by virtue of their contract of purchase and title-bond from Carlile, with constructive notice of the mortgage recorded on the 24th of January, 1848.

To show that complainants had such right, I rely upon the following authorities: Kramer *v.* Bank of Steubenville, 15 Ohio, 253; 1 Am. Dig. 1847, p. 364, § 5 and 8; 6 Humph. 99; Skinner *v.* Cox, 4 Dev. 59; 2 U. S. Dig. Sup. p. 408, § 19 and 24; Leeds *v.* Cannon, 3 Sumner, 488; Bassett *v.* Bassett, 10 N. Hamp. 64; Id. U. S. Dig. p. 409, § 43; North *v.* Crowell, 11 N. Hamp. 251; McDaniels *v.* Colven, 16 Verm. 300; Garber *v.* Henry, 6 Watts, 57; 2 Barr's R. 97; 24 Pick. 270; Frye *v.* Bank of Illinois and others, 11 Ill. R. 381. In this last case, a note and mortgage, purporting to have been given 3d May, 1836, for $3,400, with twelve per cent. interest, to mature 1st January, 1840, was allowed against subsequent incumbrances, to stand as security for further advances made in 1837, 1838, and 1839, up to the time of recording subsequent incumbrance, although the original mortgage contained no stipulation as to its standing as a security for the further advances.

At the time of the decree in this case, the said appellees, by their own showing, owed $175 balance on the lot, with one year's interest, and complainants were not allowed to foreclose even for that.

M. McCONNEL, for appellees.

TRUMBULL, J. Collins and Kellogg, who were merchants in St. Louis, filed their bill to foreclose a mortgage executed to them by John Carlile, Nov. 2, 1847, upon certain real estate situate in the county of Morgan. The mortgage was duly recorded, January 14, 1848, and purports to have been executed

to secure the payment of a five hundred dollar note, bearing even date therewith, payable in three months, executed by Carlile to the complainants.

The bill to foreclose, as against Carlile, is in the usual form; but makes John Calloway, Levi Calloway, and J. H. Salmon, also, defendants, who are alleged to be in possession of the mortgaged premises, and to claim some interest therein, by some sort of a title-bond, subsequent to the mortgage.

The bill was taken for confessed against Carlile. The other defendants answered, alleging payment of the $500 note, and claiming title to the mortgaged premises by virtue of a title-bond executed to them by Carlile, November 17, 1848, recorded June 15, 1849, conditioned for the payment of $275, the purchase-money, in three notes, one payable March 1, 1849, and the two others, March 1, 1850. These defendants also filed a cross-bill, requiring complainants to discover the consideration of the $500 note; and if for goods, wares, and merchandise, to set forth an account, giving the dates, items, and amounts; also an account of all moneys paid them by Carlile since the date of the note.

To this cross-bill the complainants answered, that the true consideration for the note was goods to be sold to Carlile, and as collateral security for any balance he might ultimately owe them, which balance, at the time of filing the bill, amounted to more than $700; and with their answer they filed an account, setting forth in detail the goods sold Carlile at different times; the various notes he had given other than the collateral note of $500; the moneys paid, the time when, &c. from November 2, 1847, to time of filing bill. This statement shows that Carlile purchased goods of the complainants at various times after the date of the mortgage, amounting, in the aggregate, to more than $2,000; and that he was owing, on notes given for goods prior to the date of the title-bond, and which are still unpaid, more than $400.

Replications were filed to the answers.

Upon the hearing, the complainants produced in evidence the mortgage, the $500 note, and the statement of their account, showing the amounts due from Carlile, when due, &c. Attached

22*

to the $500 note was this memorandum, which was also in evidence : "'This note of John Carlile is left as collateral security, it being mentioned in a mortgage on his effects, &c."

The defendants gave in evidence the title-bond, and also a cancelled note of $100, being the first instalment of purchase-money for the property mentioned in the bond.

The question is, whether Carlile was so indebted to the complainants, by virtue of the dealings between them, that they could foreclose the mortgage for the amount due on account of goods sold to him prior to the time of the sale of the mortgaged premises to the other defendants, or of the complainants receiving notice of the sale, which was June 15th, 1849, the date of the record of the title-bond.

The mortgage to the complainants, it will be recollected, was filed for record January 24th, 1848. The defendants, who purchased from Carlile subsequent to that time, can, therefore, claim nothing on the score of a want of notice that the premises were incumbered. They were bound to know of the mortgage after it was recorded, and whether they did so or not, in point of fact, is quite immaterial.

It is objected to this mortgage, that it was without consideration. *Primâ facie* it was certainly a valid mortgage, the note of itself being *primâ facie* evidence of an indebtedness. Did the disclosure of the facts, brought out in answer to the cross-bill, show that there was no consideration for the note and mortgage? Not unless an agreement to let another have credit on the faith of such a note and mortgage can be held to be of no value. Such an agreement is, however, often of vital importance to an individual, particularly to a merchant wishing to purchase goods on a credit. There is no pretence of any fraud in fact in this case, nor that the sums claimed by the complainants of Carlile are not justly due; but the objection is, that a mortgage to secure future debts is invalid. Such, however, is not the law. It is said by Chancellor Kent, in the 4th volume of his Commentaries, 175: "A mortgage or judgment may be taken, and held as a security for future advances and responsibilities to the extent of it, when this is a constituent part of the original agreement; and the future advances will be covered by

the lien, in preference to the claim under a junior intervening incumbrance, with notice of the agreement." In the case of Commercial Bank *v.* Cunningham, 24 Pick. 274, the court say, " We think it clear, that a mortgage made *bonâ fide*, for the purpose of securing future debts, expected to be contracted in the course of dealings between the parties, is a good and valid security." See, also, United States *v.* Hooe, 3 Cranch, 73; Brinkerhoof *v.* Marvin, 5 Johns. Ch. Rep. 326; Fry *v.* Bank of Illinois, 11 Illinois, 381.

It would have been proper for the mortgage, in this case, to have stated the true consideration for which it was given; but the omission to disclose the real transaction on the face of the mortgage will not make it invalid, unless some one has been prejudiced by the misrepresentation.

It was said, by Chief Justice Marshall, in the case of Shirras *v.* Caig, (7 Cranch, 34,) " It is not to be denied, that a deed which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a vigorous examination. It is certainly always advisable, fairly and plainly, to state the truth; but if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed, of his real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation."

The Vice-Chancellor, in the case of Craig *v.* Tappin, (2 Sandford's Ch. Rep.) reviews all the authorities upon this point, and comes to the conclusion, that a mortgage, intended to secure future advances, need not express that object in the mortgage itself, though it would be better if it did. See, also, Lyle *v.* Ducomb, 5 Binney, 585; Storer *v.* Herrington, 7 Ala. 143.

In this case, the fact that the real transaction did not appear upon the face of the mortgage, cannot have operated to the prejudice of the defendants, who purchased from Carlile. They had constructive notice, by the record of their mortgage, previous to the time of their purchase, of a lien upon the premises to the extent of five hundred dollars; and surely they cannot complain

when, upon a full disclosure, it turns out that the amount of the lien is less than that sum. Had the mortgage disclosed the real transaction, and shown upon its face that it was taken as collateral security for goods afterwards to be sold, the defendants could not have ascertained the extent of the lien without an application to the complainants, who would have been bound to have given them the true amount; as it was, they might have ascertained how much was claimed to be due on the $500 note by an application to the complainants.

Another objection to a recovery in this case has been raised, which is, that the bill, being in the ordinary form of bills to foreclose, without setting forth the real consideration of the mortgage, the complainants must fail in this suit, for the reason that the allegations and proofs do not correspond.

The bill shows a case in which the complainants would clearly be entitled to a decree. It was not necessary to set forth the consideration of the $500 note, because, *primâ facie*, it imported a good and sufficient consideration. This was all that was requisite, in the first instance, on the part of the complainants.

The defendants come in and inquire into the consideration of the note, which they had a right to do. The proof shows that the complainants are not entitled to a decree for the full amount claimed. It is surely no objection to their having a decree for what is due, because they have claimed too much; and it is immaterial what the consideration of the note was, so it was good and valuable. The recovery is at last upon the mortgage, as set forth in the bill, though the extent is limited by the facts disclosed by the testimony. The evidence does not show a different case from that stated in the bill; but it brings into the case facts not stated, and not necessary to be stated, in complainants' bill, to entitle them to a decree.

There is not, in our opinion, such a variance between the allegations and proofs as to prevent a decree of foreclosure in this suit.

The decree of the Circuit Court is reversed, and the cause remanded, with directions to that court to enter a decree of foreclosure in favor of the complainants, for the amount due them

for goods sold to Carlile, previous to the filing for record of the title-bond to his co-defendants, provided it does not exceed the sum due upon the $500 note; and that said court take such other and further steps in the case as to law and equity appertain, and are not inconsistent with this opinion.

*Decree revesed.*