## Andrew Ladue v. The Detroit and Milwaukee Railroad Company.

*Mortgage upon land,— morgagee's interest.* — A mortgage of land in this State conveys no title, either legal or equitable, to the mortgagee, but the title remains in the mortgagor until foreclosure and sale, and the mortgage is but a security in the nature of a specific lien for the debt or obligation to which it is collateral.

*Mortgagees, — how affected by a subsequent sale of the land.* — A mortgage is only a lien or incumbrance upon land to the extent of the debt or obligation that it was given to secure, and when made to secure the mortgagee for liabilities, which it is optional with him to incur or not for the mortgagor, and the mortgagor afterwards conveys the property by deed, which is put upon record before such liabilities are incurred, such deed is entitled to precedence

*Record of mortgage, — of subsequent deed, — notice.* — The record of the mortgage, in such case, is only notice to a subsequent purchaser to the extent of liabilities incurred prior to the purchase, and such as may be incurred subsequent to the record of the deed, will constitute no lien upon the property.

*Heard May* 10 *and* 11.    *Decided July* 8.

Appeal in chancery from Wayne Circuit.

The facts, so far as they are necessary to an understanding of the legal questions involved in the case, will be found stated in the opinion.

*G. V. N. Lothrop,* for complainant.

1. Mortgages given to secure future advances and contingent liabilities, are valid.

This, though often contested, seems now satisfactorily established. — *United States v. Hooe,* 3 *Cranch,* 73; *Shiras v. Caig.,* 7 *Cranch,* 34; *Conard v. Atlantic Ins. Co.,* 1 *Pet.,* 448; *Lawrence v. Tucker,* 23 *How. U. S.,* 15; *Leeds v. Cameron,* 3 *Sumner,* 492; *Gardner v. Webber,* 17 *Pick.,* 414; *Commercial Bank v. Cunningham,* 24 *Pick.,* 274; *Holbrook v. Baker,* 5 *Greenl.* 309; *Brinkerhoff v. Marvin,* 5 *Johns. Ch.,* 327; *Bank v. Finch,* 3 *Barb. Ch.,* 297; *Babcock v. Bridge,* 29 *Barb.,* 427; *Thomas v. Kelsey,* 30 *Barb.,* 268; *Lyle v. Duncomb,* 5 *Birney,* 585; *McDaniel v. Calvin,* 16 *Vt.,* 300; *Seymour v. Darrow,*

LADUE *v.* THE DETROIT & MILWAUKEE RAILROAD CO.

31 *Vt.*, 122; *Soule v. Albee,* 31 *Vt.*, 142; *Lewis v. Deforest,* 20 *Conn.*, 427; *Kramer v. Bank,* 15 *Ohio*, 253; *Burdett v. Clay,* 8 *B. Mon.*, 287; *Bell v. Fleming,* 1 *Beasley*, 13 *and* 490.

Some of the New York cases hold that such mortgages must, on their face, define or limit the extent of the security. And this doctrine would seem to have retained some hold even as late as *Truscott v. King,* 2 *Seld.*, 157.

But it has been finally abandoned by the Court of Appeals. — *Robinson v. Williams,* 22 *N. Y.*, 386.

And this agrees with the doctrine of this Court. — *Mich. Ins. Bank v. Brown,* 11 *Mich.*, 271.

2. Such a mortgage is good for advances made *after* a subsequent mortgage or sale, *if made in good faith, without notice.* — *Gordon v. Graham,* 2 *Eq. Cas. Ab.*, 598; *Truscott v. King,* 6 *Barb.*, 346; *S. C.* 2 *Seld.*, 157; *McDaniels v. Colvin,* 16, *Vt.*, 300; *Nelson's Heirs v. Boyce,* 7 *J. J. Marsh,* 401; *Burdett v. Clay,* 8 *B. Mon.*, 287; *Nelson v. Russell,* 13 *Md.*, 494, 535 *: Per Whittlesey V. C. Bank v. Finch,* 3 *Barb. Ch.*, 289; *Craig v. Tappan,* 2 *Sandf. Ch.*, 78; *King v. McVickar,* 3 *Ib.*, 208; *Frye v. Bank,* 11 *Ill.*, 381.

3. The record of a subsequent deed or mortgage, is not notice to a prior purchaser or mortgagee. — *Stuyvesant v. Hone,* 1 *Sandf. Ch.*, 419; *Stuyvesant v. Hall,* 2 *Barb. Ch.*, 151; *Truscott v. King,* 6 *Barb.*, 346; *Truscott v. King,* 2 *Seld.*, 166, *per Edmunds J.*; *Taylor v. Maris' Ex'rs,* 5 *Rawle*, 51; *Rowan v. Sharp's Rifle Co.*, 29 *Conn.*, 325.

This seems to be held everywhere except in Ohio. — *Spader v. Lawler,* 17 *Ohio*, 371.

There is one case which holds that in a mortgage for future *optional* advances, it is not a valid security till the advance is made; that as to each advance it is to be treated as a new mortgage, having its origin at the time of each advance, so far as that advance is concerned;

and that, therefore, as to such advance, it is not to be treated as made or recorded till the advance is actually made. — *Terhoven v. Kems*, 2 *Barr*, 96.

This case, though not referred to, seems to have been partially countenanced by *Parmenties v. Gillespie*, 9 *Barr*, 86. And the judge, who delivers the opinion, in *Boswell v. Goodwin*, 31 *Conn.*, 74, suggests that such a doctrine is reasonable.

In my judgment, the doctrine is not only novel but unsound. It imposes the burthen of notice and vigilance on the wrong party. "To make it the duty of the first mortgagee to inquire before he acts, lest he may injure some one, would reverse this rule, and make it his duty to do for the second mortgagee what the latter should do for himself." — *James v. Brown*, 11 *Mich.*, 30.

It disturbs the repose which the registry law intends to give the holder of a security, which the law declares valid, and of which, by the registry he has given open and public notice to the whole world. Every subsequent purchaser knows that he must consult this registry at his peril; and, such purchaser, if he would prevent further advances on the faith of such securities, is, in the plainest equity, bound to give notice of his intervening interest.

*H. H. Emmons* and *A. Pond*, for defendants.

1. A mortgagee has no estate in the land. His entire interest is but a chose in action; and no mortgage can be created without a debt, or continued after the debt is discharged. The signing, sealing and recording of a paper in the form of a mortgage cannot create the relation of mortgagor and mortgagee, until some debt exists, or liability is assumed, to give it vitality. — *The King v. St. Michael's, Douglass*, 630; *Carburn v. Inglis*; 2 *Jacobs & Walker*, 194, note; *Burnett v. Kenniston*, 2. *Vernon*, 401; *Richard v. Syms, Barnadiston Ch. Rep.*, 90. This

case is cited in *Edwards v. Ins. Co.*, 21 *Wend.*, 485; *Martin v. Mowlin*; 2 *Burr*, 978; *Flock v. Longmate*, 8 *Beavan*, 420; *The King v. The Inhabitants of Edgington*, 1 *East*, 287; 1 *Hilliard on Mortgages*, 215; *Jackson v. Willard et al.*, 4 *Johns.*, 41; *Runyan v. Merserau*, 11 *Johns.*, 534; 4 *Kent*, 193; *Lanev. v. Shears*, 1 *Wend.*, 433; *Jackson v. Bronson*, 19 *John.*, 325; *Gardner v. Heart*, 3 *Denio*, 232.

The New York cases, thus far, all arose prior to the statute, taking from the mortgagee the right of ejectment until foreclosure.

The following cases were subsequent. — *Edwards v. Ins. Co.*, 21 *Wend.*, 467; *Waring v. Smyth*, 2 *Barb. Ch.*, 119; *Bryan v. Butts*, 27 *Barb.*, 504; *Bank v. Tallman*, 31 *Barb.*, 201; *Kortright v. Cady.* 21 *N. Y.*, 343.

It has been held in New York, that the statute taking from the mortgagee the right of ejectment until after foreclosure only affects the remedy and did not "alter the law as to the interest vested in the parties to the mortgage," and that the mortgagee, if he once obtained possession by any lawful mode, could not be put out of possession by the mortgagor, until payment of his mortgage. — 15 *Wend.*, 248. But it is evident from the above cases that it would not now be so held. And it is settled otherwise in this State. — See also, *Gunn v. Scovill*, 4 *Day*, 234; *Town of Barkhampsted v. Farmington*, 2 *Conn.*, 600; *Fisk v. Fisk*, 1 *Conn.*, 559; *Huntington v. Smith*, 4 *Conn.*, 235; *Leonard v. Bosworth*, 4 *Conn.*, 421; *Roath v. Smith*, 5 *Conn.*, 133; *Clark v. Beach*, 6 *Conn.*, 164; *Porter v. Seeley*, 13 *Conn.*, 564; *Cooper v. Davis*, 15 *Conn.*, 556.

*City of Norwich v. Hubbard et al.*, 22 *Conn.*, 587. — In this case, Church Ch. J., p. 594, says: "Although in this State we have held that, in a strictly legal sense, the mortgagee has a bare title, even after payment of the debt, if the law day had expired before payment,

until a release deed is executed; yet this is rather a *matter of policy*, arising from our recording system than from any other view of it. *In truth*, the mortgagee has only a *lien* and cannot be considered or treated as a *proprietor* or *owner* of the mortgaged estate."

The decisions in Connecticut, then, with this explanation, go quite to the liberal limit established in this State. *Bolton v. Ballard*, 13 *Mass.*, 345; *Swan v. Stevens*, 15 *Mass.*, 227; *Gorton v. Roxborough*, 6 *Mass.*, 50; *Blanchard v. Colburn*, 16 *Mass.*, 345.

"A mortgage in South Carolina does not convey the legal title, and the fee remains in the mortgagor even after condition broken." — *Thayer v. Cramer*, 1 *McC. Ch.*, 395; 2 *Eq. Dig.* 294, §22. And see 2 *Geo. Dis.* 76, *Seals v. Corbine*; 2 *Eq. Dig.* 292, §24; and 10 *Geo.* 6, *Renynolds v. The Justices*, etc. This, we believe, is the well settled law of Georgia. — *Weeks v. Eaton*, 15 *N. H.*, 145; *Bell v. Morse*, 6 *N. H.*, 205; *Hobson v. Rolle*, 20 *N. H.*, 41; *Fenbish v. Goodwin*, 25 *N. H.*, 428.

*Sutherin v. Mandhurn*, 5 *N. H.*, 420. — The opinion in this case is among the ablest in this country at that day. It shows at length nearly all the incidents which have been decided to belong to the mortgagee's estate which attach to personalty, and which do not belong to realty. Authorities are cited under each head to verify the argument. It is said it cannot be sold on execution; that it will not pass by deed of the *realty alone*, or without assignment of the debt; that the wife is not dowable of estate; that it will not pass by a will of real estate; that after assignment of the debt no estate is left in the mortgagee; that it goes to the administrator and not to the heir, and is discharged by payment or tender; that the heir must redeem from it; that a settlement is gained by the mortgagor; and that his interest cannot pass by parol.

To this list we will here add, that the husband may

dispose of it as among the wife's *choses in action;* that it passes by assignment not sale; that mortgagor may vote when legal title is necessary for such purpose; may at Common Law convey a title so that his grantee may receive a release, and that the mortgagee cannot do so. It passes by a will of personalty. Its transfer is not within the recording acts in reference to real estate; and to create which does not violate the statute in relation to selling pretended titles to realty. It gives no vote when title to real estate is necessary. It passes in all cases subject to equities which real estate does not. An alien here and in England may hold it when he cannot a title to realty.

This list of incidents belonging to personalty, and which do not appertain to the real estate, might be indefinitely protracted, by simply pursuing the decisions. But enough appears to show that the interest of a mortgagee, his whole interest, is not in any sense real estate. It is but a *chose in action,* a chattel interest. — *Wilson v. Kimball,* 27 *N. H.,* 300; 24 *N. H.,* 485, *Whittemore v. Gibbs.* The same decision was repeated in 36 *N. H.,* 39, *Blake et al., v. Williams; Rickett v. Maderia,* 1 *Rawle,* 325; *Vansant v. Allmon,* 23 *Ills.,* 33; *Wood, et. al., v. Trask et al.,* 7 *Wis.,* 566; *Webb v. Flanders,* 32 *Maine,* 175; *Peters v. Jamestown Bridge Co.,* 5 *Cal.,* 334; *Ord v. McKee,* 5 *Cal.,* 615; *Crow, et al., v. Vance,* 4 *Iowa,* 434; *Sherman v. Sherman.* 3 *Ind.,* 337; *Cameron v. Irwin,* 5 *Hill,* 272; *Ryan v. Dunlap,* 17 *Ill.,* 40; *Lucas et al., v. Harris,* 20 *Ill.,* 169; *Wilson v. Troup,* 2 *Cow.,* 230; *Armitage v. Wickliffe,* 12 *B. Monroe,* 496; *Ellison v. Daniels,* 11 *N. H.,* 274; *U. S. v. Sturges,* 1 *Paine,* 534; *Hughes v. Edwards,* 9 *Wheaton,* 489; *Peirz v. Clark,* 5 *Pet.,* 483; *Paxon v. Paine,* 3 *Harris & McHenry,* 399; *Perkins v. Dibble,* 10 *Ohio,* 433.

The following cases show that the mortgage, the *entire interest,* will pass by parol or delivery of the evidence of

indebtedness. — 1 *Blackford*, 137; 5 *Cowen* 202; 9 *Wend.*, 410; 1 *John.*, 580.

That an outstanding satisfied mortgage cannot be set up to defeat an ejectment. — See 5 *Pet.*, 483; 6 *John.*, 290, *Hitchcock v. Harrington*; 7 *John.*, 278, *Collins v. Forrey*; 10 *John.*, 381. That an outstanding mortgage is not a breach of the covenant of seizin. — 7 *John.*, 476; 2 *Cowen*, 196. That payment of the debt discharges the mortgage, and that no release is necessary even after the law day has passed. — See 8 *Greenl.*, 278; 5 *N. Y.*, 252; 1 *Cow.*, 122; 18 *John.*, 110; 14 *Mass.*, 101; 7 *Mass.*, 355; 1 *Halstead*, 472; 6 *N. H.*, 156; 26 *Wend.*, 541 — where a great number of the English and American cases are reviewed, and their distinctions ably traced; also, 5 *Mass.*, 237, 233; 12 *Wend.*, 61; 1 *Carnes' Cases in Error*, 69; 5 *Johns. Ch. Rep.*, 452; 18 *John.*, 7; 8 *Pick.*, 522; 16 *Pick.*, 23; 21 *Pick.*, 230; 5 *Metcalf*, 310; 7 *Vermont*, 501; 11 *Mass.*, 125, 9 *do.*, 34, 242; 17 *Mass.*, 419; 2 *Greenl.*, 322; 3 *Harris & McHenry*, 400; 5 *Pick.*, 243; 2 *Harris & McHenry*, 7; 21 *Wend.*, 483 — where the distinctions taken in Massachusetts between the effect of a tender and a payment are considered.

The cases in Michigan are equally full. — *Dougherty v. Randall*, 3 *Mich.*, ( *Gibbs*,) 585; *Carruthers v. Humphrey*, 12 *Mich.*, 270; *Crippen v. Morrison, et al.*, 13 *Mich.*

Several other decisions, at law and in equity, in this State, apply these principles to other circumstances. No other tribunal in this country has gone further than this to divest mortgages of the old technicalities, and place them upon a basis where the real intentions of the parties, and the circumstances of modern business, demand.

There is not one of the eastern, northern or western States which has not made similar decisions.

Various questions concerning the original execution, the registry, the assignment, the payment, the enforcement, the discharge, the priority, the equities between assignee and

mortgagor, the parties to bills, the effect of foreclosure, and the multitude of other questions which have presented themselves to the Courts, have uniformly been disposed of in conformity with these doctrines. The history of their application shows they are not nominal and technical, sustained only in peculiar circumstances; but that the very essence of a mortgage distinguishes it in essential principle from a *title*, and demonstrates, it seems to us that a mere *form or paper writing*, recorded to await the future action of parties in the creation of a debt, which can alone give it vitality, is, not technically only, but necessarily and substantially, what these numerous cases call it—a *simple nullity*, a " shadow."

2. One who advances money or assumes a liability under a mortgage, previously made to secure the same, is deemed in the law to be an incumbrancer only as of the date when such liability is assumed or advance made. The public registry is notice to him with the same force and effect as if he had taken a new mortgage security.

The cases which we think establish this proposition either by express decision or well-reasoned *dicta*, will be noticed first, and then those, so far as we can anticipate them, which will be relied upon against us.

The following carefully reasoned and well considered judgments we submit as ample to sustain our theory. — *Brinkerhoff v. Marvin*, 5 John. Ch., 326 ; 6 John. Ch., 429 ; *Craig v. Tappin*, 2 Sanf. Chy., 78 ; *Collins v. Carlisle*, 13 Ill., 254 ; *Kramer v. Farmers' & Mechanics' Bank*, 15 Ohio, 253 ; *Spader v. Lawler*, 17 Ohio, 371 ; *Bell v. Fleming's Executor*, 1 Beasley Chy., 13 ; *Shepard v. Shepard*, 6 Conn., 37 ; *Crane v. Deming*, 7 Conn., 387.

In this last case a mortgage conditioned that the mortgagor should pay all sums to be advanced by the mortgagee, in pursuance of a certain bond, is held good even as to advances made after subsequent mortgages have been executed. The decision is put expressly upon the ground

that the mortgagee was bound by his agreement to make
the advances, and so his liability was fixed from the
date of the mortgage. The pains taken to give the rea-
son in this case shows that, had there been no such
obligation, the ruling would have been otherwise. — See 8
Conn., 215, Hubbard v. Savage; Boswell v. Goodwin, 31.
Conn., 74; American Law Register, vol. 12, p. 92.

Ch. J. Redfield, in a note to Boswell v. Goodwin,
citing a portion of the judgments on which we rely,
adds his authority to the views we seek to maintain. —
Parmenter v. Gillespie, 9 Barr., 86, note (a) p. 88; Ter
Hoven v. Kerns, 2 Barr, 96, 1845; Bank of Montgomery's.
Appeal, 36 Penn., 170.

These cases, beyond some inconsiderable dicta, constitute
what, under some disadvantages, we have been able to
find directly discussing our proposition, and determining
it in our favor.

We now ask attention to the judgments the other
way, and the reasons upon which they profess to rest.
They will be found wholly inapplicable to our system of
laws. — Gordon v. Graham; 7 Viner's Abridgement, p. 52.

2 Eq. Cas. Abridged, 598. — This unreported case is
the earliest on this subject. Though decided apparently
without much consideration of principles, and though the
confidence of the Judge seems to have been shaken by
the importunity of counsel, it remained until very recently.
without being overthrown.

It is cited in the text books as law. — Greenl. Cruise,
1 p. 665; Coote on Mortgages, p. 429.

Although overruled in England, it is the parent of the
few erroneous decisions we have in this country in refer-
ence to this subject. — Hopkinson v. Ralt. House of
Lords, 1861; 7 Jurist, N. S., 1209; 5 Law Times, N.
S., 90.

In this case a mortgage to A to secure a specific sum
and future advances, was followed by a subsequent mortgage

to B in a similar form with notice of the prior mortgage. Held (affirming the decision of Lord Chancellor Chelmsford, Lord Cranworth dissenting,) "that A was not entitled to priority for further advances made by him after notice of the mortgage to B."

The previous case of *Gordon v. Graham* is here very fully discussed. Doubt is expressed as to whether it is accurately reported, but the doctrine of the case as reported is overruled, and the law established that the second mortgagee, on giving notice to the first, will be protected against advances made by the first mortgagee after such notice.

The case does not contain any full discussion of the principles applicable to the point decided.

There is good reason for requiring a second mortgagee in England to give notice to the first, which does not exist here. In England there is no general registry, and hence our argument as to record notice would not be applicable there.

Tacking is founded on the doctrine that the first mortgagee has the *legal estate*, and that a Court of Equity will not deprive him of this until all the equities he has are satisfied. — See *Coote on Mortgages*, *p.* 410, *and seq.*

This doctrine that the mortgagee has the legal estate, and with it the practice of tacking, have been overthrown, in this country. Hence, all English cases founded on this doctrine have ceased to be applicable here. — *Kent's Com.*, *vol.* 4, *175*, *et seq.*

*Truscott v. King*, 2 *Selden*, 147, S. C. *Barb.*, 346. — This case cites the overruled one of *Gordon v. Graham*, and the elementary books approving it; and, without one word on the real and only question at issue, whether the party advancing was a *prior* or subsequent incumbrancer, goes solely upon the general ground that a record is notice only to *subsequent* incumbrancers. This cannot be a precedent here, unless we return to the exploded English doctrine upon which *tacking* depends.

*Robinson v. Williams,* 22 *N. Y.,* 180. — This is the last New York case we have been able to find. We have now examined every case in that State which seems to us to bear upon the point under discussion, and we come to the conclusion that the question has never been carefully examined, and that there is no case which, even there, could be considered as of much weight against our views.

*Griffin v. Burtnett, et al.,* 4 *Edwards' Chancery,* 673.— This case, relied upon to sustain the doctrine of the complainants, has no such tendency. The party was *bound* to make the advances. The obligation was absolute. We concede fully that to secure an *existing obligation,* a mortgage is good, its record notice, and its lien as perfect as though it were to secure a specific sum already advanced.

*McDaniels v. Colvin,* 16 *Vt.,* 300.—This decision was made upon the authority of English cases, one of which — *Gordon v. Graham, ante* — has been expressly overruled in England, and none of which will be claimed to be law here now. It does not profess to uphold the rule irrespective of the cases, but expressly cites and adopts them. The authority of the case is also weakened by the opinion of Judge Redfield, one of the Judges rendering the decision, and afterwards Chief Justice of the Court. He says (*Am. Law Register, vol.* 12, *p.* 91), speaking of the rule laid down in this case: "that is a rule which exists nowhere except in Vermont, and will doubtless be overruled there when the Court find a convenient case in which to change the rule."

*Shirras v. Caig,* 7 *Cranch,* 34. — The case is not one against our position. Indeed, although all we urge be fully granted, the decree in *Shirras v. Caig* might stand. It is sometimes loosely cited as deciding the general principle that a subsequent grantee must give actual

notice. The answer is, there was no record notice in the case, and therefore the question of whether, when the advance was made, the record should not be examined, could not arise. Certainly it was not discussed or decided.

*Rowan v. Sharp's Rifle Company*, 29 *Conn.*, 282. — This case does not involve the question we raise. It was *not* decided that a subsequent grantee must give *actual notice*, but so wholly inapplicable were the doctrines, this case is cited to sustain, that it gave the defendant *full priority for all his claim*, although he had *actual* notice. Had the instruments been treated as successive *mortgages*, of course an advance after actual notice of a subsequent incumbrance would not have been allowed.

*Wilson et al. v. Russell et al.*, 13 *Md.*, 495. — Nothing is said as to whether or not the mortgagees had actual notice of the second mortgage; and no distinction is intimated between the effect of such notice and of the record of said second mortgage. The case, therefore, is of no weight.

We submit that both principle and weight of authority are with us.

CHRISTIANCY J.:

The mortgage which the bill in this case seeks to foreclose, was executed by John Ladue to the complainant and Francis E. Eldred, composing the firm of Ladue & Eldred, on the fourth day of August, 1852, to secure and indemnify the firm against any endorsements which might be made, or liabilities to be incurred by them as sureties for John Ladue, as well as for any moneys they might advance for him, according to the condition of a bond to which the mortgage was collateral, and which was of like effect. There was nothing in the papers or in the arrangement between the parties which bound Ladue & Eldred to make any advances, or to endorse any paper for John Ladue, or to incur any liability

for him, nor was the latter bound to accept any such accommodation. The effect of the arrangement was that such advances and liabilities, if made or incurred, would be purely optional on the part of the mortgagees. This mortgage was duly recorded on the day of its date. On the ninth day of May, 1853, John Ladue, the mortgagor, sold and conveyed the mortgaged premises to Charles Howard, (through whom the Rail Road Company derive their title,) by warranty deed, which was duly recorded on the ninth day of July, 1853. John Ladue, however, remained in possession, using the premises as before, until his death, December 4th, 1854.

No claim is made for any advances made by Ladue & Eldred to John Ladue, but the whole claim under the mortgage is based upon endorsements made for him by the mortgagees, which have been paid by Andrew Ladue, one of the complainants, and all *these endorsements*, as shown by the proofs, were made some time after the sale to Howard and the recording of his deed. Whatever endorsements were made prior to that time, seem to have been taken up by John Ladue; and it does not satisfactorily appear by the evidence that any of these endorsements, made since the recording of Howard's deed, were made in renewal of paper endorsed by them previous to that time. No endorsements made prior to the recording of Howard's deed are in any way involved, and the case may therefore be considered in all respects in the same light as if no such previous endorsements had ever been made, especially as it does not appear that at the time of the sale to Howard, or the recording of his deed, there was any existing unsatisfied endorsement, or any subsisting liability, inchoate or otherwise, incurred by the mortgagees for the mortgagor.

The mortgagees, at the time of the endorsements in question, had no notice of the deed to Howard, unless the record of that deed is to be considered such notice.

the deed having been some months previously recorded. The validity of the mortgage, as between the parties, for any amount of advances which might be made, or liabilities incurred under it, after they should have been thus made or incurred, is not questioned by the defendants; nor is it denied that the record of it would be sufficient notice to subsequent purchasers and encumbrancers, of the amount which the mortgagees might actually have advanced or endorsed for the mortgagor; or, in other words, the amount for which it had become an actual and subsisting security, at the time when the question of notice of the mortgage became material — which, for the purposes of this case, is admitted to cover the period from the purchase by Howard down to the time of the recording of his deed, the record of which is claimed to be notice to the mortgagees as regards any advances made to, or liabilities incurred by them for the mortgagor after the recording of the deed. Nor is it denied, that if the mortgagees, by the contracts or arrangements between them and the mortgagor (to secure which, on the part of the latter, was the object of the mortgage,) had been bound to make advances or to endorse for the mortgagor, the record of the mortgage would have been full notice to Howard, and the mortgage would have been good against him, though the advances were not in fact made or the paper endorsed until after the deed to him and actual notice of that deed to the mortgagees. The defendants also admit that the result would be the same under this mortgage, as to any advances made or paper endorsed by the mortgagees for the mortgagor, before they had actual or constructive notice of the sale and deed to Howard; but they insist that, as there was not at the time of Howard's purchase or the recording of his deed any debt of the mortgagor, or any liability incurred for him by the mortgagees, absolute or inchoate, nor any obligation on their part to incur such liability,

13 Mich.—Z.

the mortgage was not then an incumbrance in fact or in legal effect: that it could only become such from the time when the advances or endorsements were actually made; and it being optional with the mortgagees whether they would make any such advances or endorsements; and the endorsements, being made subsequent to the recording of Howard's deed, the mortgage is, in legal effect, subsequent to the deed, and the record of the deed was notice to the mortgagees of Howard's rights.

The first question, therefore, for our determination is, what was the legal effect of the mortgage (if any) upon the land, at the time of the recording of the mortgagor's deed to Howard?

That a mortgage in this State, both at law and in equity, even when given to secure a debt actually subsisting at its date, conveys no title of the land to the mortgagee (especially since the statute of 1843, taking away ejectment by the mortgagee); that the title remains in the mortgagor until foreclosure and sale, and that the mortgage is but a security, in the nature of a specific lien, for the debt, has been already settled by the decisions of this Court. — *Dougherty v. Randall,* 3 *Mich.,* 581; *Caruthers v. Humphrey,* 12 *Mich.,* 270; and *Crippen v. Morrison,* to be reported in 13 *Mich.* This is in accordance with the well settled law of the State of New York, from which our system of law in regard to mortgages has been, in a great measure, derived. — *Jackson v. Willard et al.,* 4 *Johns.,* 41; *Collins v. Torrey,* 7 *Johns.,* 277; *Runyan v. Messerean,* 11 *Johns.,* 534; *Gardner v. Heartt,* 3 *Denio,* 232; *Edwards v. Ins. Co.,* 21 *Wend.,* 467; *Waring v. Smyth,* 2 *Barb. Ch.,* 119; *Bryan v. Butts,* 27 *Barb.,* 504; *The Syracuse City Bank v. Tallman,* 31 *Barb.,* 201; *Cortright v. Cady,* 21 *N. Y.,* 342.

This view of a mortgage is also sustained by several of the English decisions, and substantially this is the more

generally received American doctrine, as will sufficiently appear by reference to the decisions, most of which have been carefully collected in the elaborate brief of the defendant's counsel, but which are too numerous to be cited here. There are exceptions and peculiarities in particular States, in some of which, as in some of the New England States and Kentucky, the old idea of an estate upon a condition continues to rankle in the law of mortgages, like a foreign substance in the living organism, but is rapidly being eliminated and thrown off by the healthy action of the Courts under a more vigorous application of plain common sense. But few of the incidents of this antiquated doctrine are now recognized in most of the States of this Union. The title, for nearly all practical purposes, being now recognized, both at law and in equity, as continuing in the mortgagor, and the mortgage as a mere lien for the security of the debt. But wherever any vestige of this now nearly exploded idea continues to prevail, in connection with the more liberal doctrines of modern times which the Courts have been compelled, from time to time, to adopt, it seems only to confuse and deform the law of mortgages by various anomalies and inconsistencies, making it a chaos of arbitrary and discordant rules resting upon no broad or just principle; while, by recognizing the mortgage as a mere lien for the security of the debt, at law as well as in equity, and thus giving it effect according to the real understanding and intention of the parties, the law of mortgages becomes at once a system of homogeneous principles, easily understood and applied, and just in their operation.

A mortgage, then, being a mere security for the debt or liability secured by it, it necessarily results, 1st, That the debt or liability secured is the *principal*, and the mortgage but an *incident or accessory.* — See cases above cited; also, *Richards v. Synes, Barnadiston's, Ch. R.*, 90;

Roath v. Smith, 5 Conn., 133; Lucas v. Harris, 20 Ill., 165; Vansant v. Allman, 23 Ill., 31; Ord v. McKee, 5 Cal., 615; Ellison v. Daniels, 11 N. H., 274; Hughes v. Edwards, 9 Wheat., 489; Green v. Hart, 1 Johns., 580; McGan v. Marshall, 7 Humph., 121; 4 Kent's Com., 193; McMillan v. Richards, 9 Cal., 365.

2d. That anything which transfers the debt (though by parol or mere delivery), transfers the mortgage with, it. — See cases above cited, especially Vansant v. Allman, 23 Ill., 31; Ord v. McKee, 5 Cal., 615; Ellison v. Daniels, 11 N. H., 274. See also Martin v. Mowlin, 2: Burr, 978; Clark v. Beach, 6 Conn., 164; Southern v. Mendane, 5 N. H., 420; Wilson v. Kimball, 27 Id., 300; 36 N. H., 39; Crowl v. Vance, 4 Iowa, 434; 1 Blackf., 137; 5 Cow., 202; 9 Wend., 410; 1 Johns., 580.

3d. That an assignment of the mortgage without the debt is a mere nullity. — Ellison v. Daniels, 11 N. H., 274; Jackson v. Bronson, 19 Johns., 325; Wilson v. Throop, 2 Cow., 195; Weeks v. Eaton, 15 N. H., 145; Peters v. Jamestown Bridge Co., 5 Cal., 324; Webb v. Flanders, 32 Me., 175; 4 Kent's Com., ubi supra; Thayer, et al., v. Campbell, et al., 9 Missouri, 277.

4th. That payment, release, or anything which extinguishes the debt, ipso facto extinguishes the mortgage. —. Lane v. Shears, 1 Wend., 433; Sherman v. Sherman, 3 Ind., 337; Ryan v. Dunlap, 17 Ill., 40; Armitage v. Wickliffe, 12 B. Monroe, 496; Paxon v. Paul, 3 Harris & McH., 399; Perkins v. Dibble, 10 Ohio, 433; Buckenridge v. Ormsby, 1 Marsh., 257; Cameron v. Irwin, 5 Hill, 272. (It will be seen from these authorities that. some, if not all, of these incidents or characteristics of a mortgage are recognized by some of the Courts which still hold the mortgage to be a conveyance of the estate —an idea, however, with which they are utterly incon-- sistent, as such incidents can only logically flow from the doctrine that the estate still remains in the mortgagor,

and that the mortgage is but a lien for security of a debt.)

These propositions, being established, the necessary result is, that the mortgage instrument, without any debt, liability or obligation secured by it, can have no present legal effect as a mortgage or an incumbrance upon the land. It is but a shadow without a substance, an incident without a principal; and it can make no difference in the result whether there has once been a debt or liability which has been satisfied, or whether the debt or liability to be secured has not yet been created, and it requires, as in this case, some future agreement of the parties to give it existence. At most, the difference is only between the nonentity which follows annihilation, and that which precedes existence.

The instrument can only take effect as a mortgage or incumbrance from the time when some debt or liability shall be created, or some binding contract is made, which is to be secured by it. Until this takes place, neither the land nor the parties, nor third persons, are bound by it. It constitutes, of itself, no binding contract. Either party may disregard or repudiate it at his pleasure. It is but a part of an arrangement, merely contemplated as probable, and which can only be rendered effectual by the future consent and further acts of the parties. It is but a kind of conditional proposition, neither binding, nor intended to bind, either of the parties, till subsequently assented to or adopted by both.

Though the question does not properly arise here, we take it for granted, for the purposes of this case, that the mortgage instrument may, if properly executed, go upon the record, and become effectual between the parties when the debt or liability contemplated shall have been created, unless the mortgagor has, in the meantime, — as he had a clear right to do — parted with the title and deprived himself of the power of creating an incum-

brance upon it. But the mere recording of the instrument would not make it a mortgage or incumbrance in legal effect, if it were not so before, nor give it a greater effect as to third persons than it had between the parties. The record of such an instrument might be an intimation that advances and endorsements were contemplated as probable, and that they might, therefore, have been already made: and for this reason might, to this extent, properly put a purchaser or incumbrancer upon inquiry. But, unless it is to have a greater effect than the record of other mortgages, it could be notice only of such facts as might have been ascertained by inspection of the instrument and papers referred to, and by inquiry; in other words, by a knowledge of the rights of the parties in respect to the land at the time notice became material, which, for the purposes of this case, as already explained, we shall assume to be from the time of Howard's purchase down to the time when he recorded his deed. The result must, therefore, be the same here as if there had been no record. Had Howard made the most diligent inquiry in connection with the inspection of the papers, what facts could he have ascertained? Nothing material to the rights of the parties or to his own rights beyond the facts already stated—nothing which, in any manner, interfered with the mortgagor's absolute right of sale. He would have learned, in fact, that the instrument recorded as a mortgage was not, in legal effect, a mortgage, nor upon any principle of justice or equity an incumbrance upon the land; that either party had a perfect right to refuse to give that future assent, or to enter into that future contract or arrangement, by which alone it could acquire vitality or force. He had, therefore, a just right to conclude that the record of his deed would be fair notice to the persons mentioned as mortgagees, as the instrument could only become a mortgage subsequent to that time, and then

only by reason of some future debt or liability which it. required the further assent and agreement of the parties to create. He had a right to conclude that, upon every sound principle, Ladue & Eldred would, as prudent men, be as likely, and ought to be as much bound, to look to the record before making any such advances, or endorsing paper for the mortgagor, as if a new mortgage for the purpose were to be taken at the time, since they had the same option to make the advances or not, as any new mortgagee would have had, and ought, therefore, to be governed by the same prudential considerations. And they must be presumed to have known that John Ladue, until such advances or endorsements were made by them, had full power to sell the land free from any incumbrance of the mortgage instrument, which had not. as yet become a mortgage.

But it is urged, on the part of the complainant, that. it was the duty of Howard, on making the purchase, to give actual notice of the fact to the mortgagees, so that. they might not afterwards be led to incur further liabilities on the faith of the mortgage. In England, where there is no general registry law by which the record of deeds and mortgages is made notice to all the world, and the state of the title cannot therefore be always ascertained in this way as with us, and where parties, therefore, can only rely upon actual notice, there may be good reason for requiring actual notice in such a case. But upon no principle which I have been able to comprehend, do I think such actual notice should be required in a case like the present. Nor have I been able to see any just or substantial reason why the record of Howard's deed (which was long before this mortgage instrument took effect as an incumbrance, and therefore prior in fact and law,) should not be deemed notice to the mortgagees in the same manner, and to the same extent, as if their mortgage had not been executed or recorded until the

time when it became effectual as a mortgage by their endorsements. Within the very spirit and purpose of the registry law, it seems to me, the record of the deed must be held notice in the one case as well as in the other. The opposite view, it seems to me, rests upon the erroneous idea that the recording of a mortgage adds something to its validity as between the parties, and that, even as between them, an instrument may be made a mortgage by recording it, which would not have that operation without the record. This, certainly, is not the effect of our registry laws. If Howard could not rely upon the record of his deed for giving notice to these mortgagees, as to future advances or endorsements, without which their mortgage instrument could never become effectual, even as between the parties, then it is difficult to see why he should be allowed to rely upon it as against any person who he might know had contemplated purchasing or taking a mortgage upon the property, and whose efforts or conversations had gone so far as to render it probable to the mind of such person that his preliminary negotiations or conversations might, at some future period, have resulted in a purchase or a mortgage; though at the time of the record of Howard's deed they had not resulted in any binding contract whatever, and both parties were at liberty to disregard them, without any breach of faith. As to all such persons, it has, I think, been generally conceded that the record of a deed is sufficient notice. In *Craig v. Tappin*, (1 *Sandf. Ch.*, 78,) a case cited by complainant's counsel, it was held that notice that a mortgage was about to be made, is not enough to bind a party with notice of the mortgage. And see *Cushing v. Hurd*, 4 *Pick.*, 252; *Warden v. Adams*, 15 *Mass.*, 232.

I have thus far endeavored to show that upon principles resulting from the nature of a mortgage, as recognized here, this mortgage should be considered, in fact

and in legal effect, *subsequent* to the deed, and that the registry of the deed should, therefore, be considered notice to the mortgagees. The authorities upon this question are not so numerous as one would be led to expect; but the few which are to be found are conflicting. I shall first notice those which are claimed to be opposed to the conclusion at which I have arrived. The English authorities upon this question I consider of very little, if any, weight, for the reason already stated, and for the further reason that, for several purposes, a mortgage is there still held to be a conveyance of the estate upon condition, and the mortgagee as having the legal title — a doctrine upon which the right of tacking (never recognized in this State) to some extent depends: the legal title coupled with an equity being held to prevail over an equity. — 4 *Kent's Com.*, 117; *Coote on Mortg.*, 410, *et seq.*; *Opinion of Lord Cranworth in Hopkinson v. Ralt*, 7 *Jurist, N. S.*, 1209. The latter remark applies also with equal force to the decisions cited from Kentucky. — *Nelson's Heirs v. Boyce*, 7 *J. J. Marshall*, 401, goes upon the express ground that the mortgage conveys the legal title, and that the mortgagee, therefore, is not bound to notice the record of a mortgage subsequently made by the mortgagor, who has *only the equity of redemption.* It cites *Bank, etc. v. Vance*, 4 *Littell*, 173, as supporting the doctrine of tacking upon this ground. *Nelson v. Boyce* also assigns, as another reason, why the record should not be notice, a provision of their statute allowing sixty days in which to record a mortgage, and says, an examination of the record by the first mortgagee might therefore be of no use. Now it is clear that neither of these reasons for refusing to the record the effect of notice exists here. Of the case of *Burdett v. Clay*, 8 B. *Monroe*, 287, (besides the fact that the mortgagee there holds the legal estate) it may further be noticed that, though the previously recorded mortgage

was in part to secure future liabilities, yet all the liabilities were incurred before the subsequent mortgage. There are some few cases in this country, decided mainly, if not solely, upon the authority of *Gordon v. Graham,* (7 *Viner's Abr.*, p. 52, 2 *Eq., Cases Abridged,* 598,) which can have little influence here, not only for the reason above stated, but because the case itself is no longer law, even in England. This case decided that a mortgagee holding a mortgage to secure money lent, *and future advances,* (which he was not bound to make) was entitled to preference over a subsequent mortgagee, even for advances made after notice of the second mortgage. But so far as relates to advances made after such notice, this case was expressly overruled by the House of Lords in *Hopkinson v. Ralt,* 7 *Jurist, N. S.* 1209, 5 *Laws Times, N. S.* 90.

Most of the cases cited by complainant's counsel against the proposition I have endeavored to establish, have no bearing upon the particular question we are now discussing. *Bank v. Finch,* 3 *Barb. Ch.,* 293, only decides that when a mortgage is given to secure an existing debt, the mortgagee does not lose his security by extending the time and taking a renewal note for the same debt. In *Craig v. Tappin,* 2 *Sandf. Ch.,* 78, the question of notice did not arise, and so far as the reasoning of the Court has any bearing upon the present question, it is in favor of the position I have endeavored to establish. In *King v. McVickar,* 3 *Sandf. Ch.,* 208, *Stuyvesant v. Hone,* 1 *id.,* 419, and *Stuyvesant v. Hall,* 2 *Barb. Ch.,* 151, no question of future advances or liabilities was involved; but the question relating to the effect of the record was similar to that decided in this Court in *James v. Brown,* 11 *Mich.,* 25, and decided the same way — a question so entirely foreign to that we are now discussing as to require no comment.

*Eyer v. Bank,* 11 *Ill.,* 381, only decides that a

mortgage subsequently executed is entitled to preference over one previously executed for future advances, after notice of the second mortgage to the first mortgagee. The notice in this case happened to be an actual notice, but the question of the effect of the record, as notice, was not involved nor decided. *Rowan v. Sharp's Rifle Co.*, 29 *Conn.*, 282, has no bearing upon this question. The title had never been in the debtor, but was con-- veyed by a third person to, and held by, the creditors, in security for future advances for the debtor, which the creditors *had agreed to make.* The decision stands well upon two grounds: 1st. The title being in the creditors and not in the debtor, the creditors were not bound to notice the record of a mortgage made by the debtor, who had no title. 2d. That the advances were not vol-. untary, the creditors being bound to advance $40,000,. and the balance being advanced to save their interest and to carry the contract into effect. Hence the creditors were allowed priority for all their advances, though part were made after notice of the mortgage.

In *Wilson et al v. Russell* 13 *Md.*, 495, the deed of trust, which was in the nature of a mortgage, recited that the mortgagees *had agreed to loan the mortgagors their notes, from time to time, as might be desired, etc.* The case seems to have been decided mainly on the authority of *Gordon v. Graham* — the authority of which is recognized, though it was not needed in that case. It does not appear whether there was actual notice of the second mortgage, and no difference is intimated between actual notice and the record. In *Taylor v. Man's Executors*, 5 *Rawle*, 51, the question, so far as regarded the effect of the record, was similar to that in *James v. Brown*. The judgment was, in legal effect as well as in date, a prior incumbrance, and the mortgage, in legal effect as well as in date, subsequent to it. There were no future advances in question.

There are, however, two cases (and they are the only ones cited, or which I have met with,) which are directly opposed to the conclusion at which I have ·arrived, and which go to the point that the record of Howard's deed would not be notice to Ladue .& Eldred. *McDaniels v. Colvin,* 16 *Vt.*, 300, and *Truscott v. King,* ·6 *Barb.*, 346. (*S. C. on Appeal,* 2 *Seld.* 166.) *McDaniels v. Colvin* rests upon the authority of English cases, among which is that of *Gordon v. Graham,* which are adopted by the Court as authority. The case expressly holds that the record of the second mortgage could not be held notice, even as to subsequent advances, under the first mortgage. Judge Redfield (afterwards Chief Justice) dis- ·sented. See his remarks upon this question (sustaining the views I have adopted) *American Law Reg., vol.* 12 *p.* 191. And in the extent and character of the actual notice to be given by the subsequent to the prior mort- gagee, this case would not probably now be recognized as law in any Court in this country. *Truscott v. King* was the case of a judgment to secure a sum due, as well as future advances which might be made, and a mort- gage was subsequently made by the debtor. Advances were made by the judgment debtor after the mortgage was recorded. As decided in 6 *Barb.*, it was held that the judgment took precedence for all advances until actual notice of· the mortgage, on the ground that the record is only notice to subsequent and not to prior incumbran- cers. In the Court of Appeals, (2 *Seld.*,) where the judgment was reversed on other grounds, Judge Jewett, who gives the leading opinion of the Court, does not allude to this point. It is only alluded to by Edmonds J., who says: " It is well settled that a judgment for future advances is good, not only against the debtor, but also ·against subsequent incumbrancers, at least up to the time when a subsequent judgment or mortgage should inter- vene. But when such subsequent incumbrance may be

said to intervene is not so well settled — whether at the
time it is put upon the record, or at the time the prior
incumbrancer has actual notice of it. The Supreme Court,
in deciding the case, held that it ought to be only from
the time of actual notice, because the docketing of a
judgment or recording of a mortgage, was, under the
statute, notice only to subsequent and not to prior incum-
brancers. In this, I am inclined to think, the Court was.
right."

Now, it seems to me, the real question which lay at
the basis of the enquiry in the above case, and to which
that decided by the Court was only incidental and
secondary, was, which in legal effect was the prior, and
which the subsequent incumbrance, and this depended
solely upon the fact when, as regarded the advances in
question, they respectively took effect. Did the judgment,
in legal effect, become an incumbrance for such advances.
before they were made and before there was any agree-
ment that they should be made? What were the rela-
tive rights of the parties to the judgment at the time
the mortgage was recorded? Could the judgment be en-
forced as an incumbrance for these advances, by reason of
any rights or obligations existing between the parties at that
time? If not, then, as to these advances, there was no in-
cumbrance at the time the mortgage was recorded, and the
incumbrance of the judgment was, in legal effect, subse-
quent to the mortgage. This, which seems to me to be the
main question, is neither discussed nor alluded to either
by the Supreme Court or the Court of Appeals. The
Court, therefore, in simply saying that the record of the
mortgage is notice only to subsequent incumbrancers, as-
sume, as it seems to me, without an attempt to establish,
the main point in controversy. There may, perhaps, be
some difference, in principle, between a judgment given
as security for future advances, and a mortgage given
for a like purpose. But if there is not, and if the deci-

sion in *Truscott v. King* is to be considered as equally applicable to a mortgage, then I cannot resist the conviction that it is in direct conflict with the principles which necessarily result from the uniform course of decision in that State — holding a mortgage to be a mere security for, and incident of, the debt, incapable of a separate and independent existence.

Having examined the cases relied upon by the complainant's counsel, as tending to controvert the conclusions at which I have arrived, I will now refer to those of an opposite tendency, some of which expressly hold the record to be notice of the intervening conveyance or incumbrance.

In *Collins v. Carlisle*, 13 *Ill.*, 254, there was a mortgage, to secure future advances, and a contract subsequent in date and time of record for the sale of the land by the mortgagor, both recorded. It was held, the mortgage was valid for those advances only which were made prior to the recording of the contract. The principle is not discussed, but it seems to be taken for granted that the record of the contract was notice as to advances afterwards made.

In *Kramer v. Farmers' and Mechanics' Bank*, 15 *Ohio*, 253, it was held, that a mortgage to indemnify against endorsements to be made for the mortgagor is valid and constitutes a lien, which takes precedence of the lien of a judgment rendered after such endorsements have been made. But, it is said, the lien of a judgment would *probably be prefered to the lien of the mortgage for advances made subsequent to the recovery of the judgment.* The liability of the mortgagee had attached before the subsequent judgment, and, therefore, the point was not involved. But in the subsequent case of *Spader v. Lawler*, 17 *Ohio*, 371, which was also the case of a mortgage to secure future advances, it was held, that the mortgage must be postponed to a mortgage subse-

quently recorded, but before the future advances were made, thus directly holding the record notice as to advances thereafter made under the first recorded mortgage; in other words, treating the first as *a subsequent mortgage* in reference to advances made after the record of the second. It is true that one of the grounds upon which the decision seems to be placed, is that the record of the mortgage (for the advances,) ought to give notice of the amount of the incumbrance.

The first case, so far as I have been able to discover, which fully meets and discusses the question upon principle, is that of *Terhoven v. Kerns,* 2 *Barb.,* 96. It was the case of a judgment to secure future advances, which were optional; and it was held, that such judgment, as to advances made after the rendition of a subsequent judgment, was not a lien as against the latter. The judgments are treated by the Court as standing upon the same grounds as mortgages, and the question is discussed generally. It is held, that a mortgage to secure future advances, which are optional, does not take effect between the parties as a mortgage or incumbrance until some advance has been made — that, if not made until after another mortgage or incumbrance has been recorded, it is, in fact, as to such after advances, a subsequent and not a prior incumbrance; and that the record of the subsequently recorded mortgage is notice, as to such after advances, as much as if the mortgage first recorded had not been executed until after such advances were made. The doctrines of this case were fully as strongly re-affirmed in *Bank of Montgomery's Appeal,* 36 *Penn.,* 170. (See also, *Parmenter v. Gillespie,* 9 *Barr,* 86, *and Note,* "*a,*" as to distinction between cases when the mortgagee is bound to make the advances, and when they are optional.) The doctrine of these cases is pronounced reasonable by Sanford, Judge, delivering the opinion of the Court in *Boswell v. Goodwin,* 31 *Conn.,* 74, and he pointedly

asks why such mortgage should not be treated "in all respects as if executed at the time when the advances are made." But one of the Judges dissented as to this point, and the case was decided upon other grounds.

Judge Redfield, late Chief Justice of Vermont, ably discusses this question in a note to the case of *Boswell v. Goodwin, Amer. Law Reg., vol.* 12, *p.* 92, arriving substantially at the same conclusion as that at which I have arrived. And Mr. Washburn ( *in* 1 *Wash. on Real Property, p.* 542,) says it seems now to be the general rule.

The counsel for the complainant have strongly urged the inconvenience which must result, especially to banks and bankers, (who are accustomed to take such mortgages) by requiring an examination of the record every time they are called upon to make such advances under such a mortgage. Like Judge Redfield (in the note above cited) I have not "been able to comprehend" this hardship. It is, at most, but the same inconvenience ·to which all other parties are compelled to submit when they lend money on the security of real estate — the trouble of looking to the value of the security. But, in truth, the inconvenience is very slight. Under any rule of decision they would be, compelled to look to the record title when the mortgage is originally taken. At the next advance they have only to look back to this period, and for any future advance only back to the last: which would generally be but the work of a few minutes, and much less inconvenience than they have to submit to in their ordinary daily business in making enquiries as to the responsibility, the signatures and identity of the parties to commercial paper. But if there be any hardship, it is one which they can readily overcome, by agreeing to make the advances; in other words, by entering into some contract, for the performance of which, by the other party, the mortgage may operate as a security. They

can hardly be heard to complain of it as a hardship that the Courts refuse to give them the benefits of a contract which, from prudential or other considerations, they were unwilling to make, and did not make until after the rights of other parties have intervened. Courts can give effect only to the contracts the parties have made, and from the time they took effect.

The decree must be reversed, and the bill dismissed; and the appellants must recover their costs in both Courts.

MARTIN Ch. J. and COOLEY J. concurred.

CAMPBELL J. did not sit in this case.