BRINKMEYER v. HELBLING ET AL.

MORTGAGE.—*Indemnity for Future Endorsements.—Subsequent Encumbrance.— Notice.*—Where the owner of real estate, in consideration of the agreement of another to become an endorser, to a specified amount, of negotiable paper of the former, executes to the latter a mortgage on such real estate, to indemnify him against loss, not only from such future endorsements, but also from similar endorsements already made, such future endorsements, when made, relate back to the execution of such mortgage, and are valid liens against encumbrances placed upon the mortgaged property subsequent to the execution of such mortgage, by persons having either actual or constructive notice thereof, though such endorsements be made by the mortgagee subsequent to the placing of such encumbrances, and with notice thereof.

PRACTICE.—*Motion to Strike Out.*—A motion to strike out part of a pleading should specify some reason therefor.

SAME.—*Supreme Court.*—The overruling of a motion to strike out part of a pleading is not available as error on appeal to the Supreme Court

From the Vanderburgh Circuit Court.

*C. Denby, S. R. Hornbrook* and *D. B. Kumler,* for appellant.

*A. Iglehart, J. E. Iglehart* and *P. Maier,* for appellees.

HOWK, J.—Before and on the 19th day of October, 1874, two actions were pending in the court below, severally entitled as follows:

1.   *Frederick W. Brinkmeyer* v. *Anton Helbling et al.;* and,

2.   *Thomas and James M. Scantlin* v. *Anton Helbling* and others.

The plaintiff in the first of these two actions was a defendant in the second, and the plaintiffs in the second were defendants in the first.

Each of said actions was brought to foreclose a certain mortgage, executed to the plaintiff or plaintiffs in the particular action; and the mortgages sued upon in the two actions covered the same property. Other parties, having or claiming to have an adverse interest in the mortgaged property, or some part thereof, were also made

parties to said actions. Issues had been made up in both said actions, and afterward, on said 19th day of October, 1874, the said two actions, by consent of all parties, were consolidated, and were thus submitted to the court below for final trial.

Upon this trial the court made a finding, which will be hereafter noticed, and, over the appellant's written motion for a new trial, and his exception saved to the decision of the court thereon, the judgment, from which this appeal is now prosecuted, was rendered upon the finding.

As the issues joined in these two actions present substantially the same questions, and as the alleged errors assigned by the appellant, which call in question the decisions of the court below in relation to the pleadings of the parties, have been assigned with special reference to the first of said actions, in our consideration of the questions presented by those errors, our examination of the pleadings will be chiefly directed to those in the first action, in which the appellant was the plaintiff in the court below.

In his complaint, the appellant alleged, in substance, that on the 29th of December, 1868, the appellees Anton Helbling and his wife, Emanuel K. Grayville, and Frederick Browneller and his wife executed a mortgage conveying to the appellant the real estate therein described, to secure, save harmless and indemnify the appellant against all loss or damage, as the endorser and surety on notes, bills and acceptances of the said Anton Helbling, and all renewals of the same to banks or individuals, to an amount not to exceed four thousand dollars; and the said mortgage further provided, that the appellant might institute legal proceedings to foreclose the same, to indemnify and save himself harmless as endorser and surety on the notes, bills and acceptances of either the said A. Helbling & Co., which firm was composed of the male mortgagors, or of the said Anton Helbling, or of both, which the appellant had then, or might thereafter, become liable for; that is to say, in case any of the said notes,

bills or acceptances on which the appellant, at the time of the execution of said mortgage, was liable, or might thereafter become liable, were not paid or renewed at maturity, then the right to foreclose said mortgage should immediately accrue to the appellant. And the appellant said, that in consideration of the delivery to him of said mortgage, and for no other consideration, he endorsed and became the surety for said Helbling on notes and bills, in the sum of four thousand dollars, the whole of which said sum (except about four hundred dollars then outstanding, as per bill of particulars filed with said complaint) the appellant had been compelled to and did pay, as the surety of said Anton Helbling, whereby an action had accrued to him upon said mortgage for said sum of four thousand dollars; that, at the instance and request of the male mortgagors, he had released certain parts, describing them, of the mortgaged premises from the operation of said mortgage on the 31st day of May, 1869, and again on the 1st day of November, 1869; that, after the execution of said mortgage, the other appellees had, or claimed to have, acquired some interest in, or lien upon, the said mortgaged premises, or some part thereof, junior to said mortgage; and that, by reason of the premises, the appellee Anton Helbling was indebted to the appellant in the sum of four thousand dollars, and in the further sum of five hundred dollars for attorney fees, etc., which remained due and unpaid. Wherefore, etc.

A copy of said mortgage was filed with, and made part of, appellant's complaint. We set out so much of the conditions of said mortgage as seems to be material in this action, as follows:

"And the said Anton Helbling desires the said party of the second part to endorse and become liable upon his paper, notes, bills and acceptances to banks and individuals, for an amount not to exceed $4,000; and the said party of the second part having agreed to become endorser for the said A. Helbling & Co. and the said Anton Hel-

bling, upon their paper, notes, bills and acceptances, for sums of money not to exceed the amount aforesaid, and whereas it may be necessary for the said party of the second part to become the endorser and surety of the aforesaid parties of the first part on the renewal of the paper, notes, bills and acceptances aforesaid: Now the object and purpose of this mortgage is to secure, save harmless and indemnify the said Brinkmeyer * * * * against all loss or damage as the endorser and surety upon notes, bills and acceptances of the said Anton Helbling and all renewals of the same to banks or individuals, to an amount not to exceed $4,000."

As the main controversy in this appeal is between the appellant and the appellees Thomas Scantlin and James M. Scantlin, we think it necessary to a proper understanding of the questions at issue between the said parties that we should set out in full the answer and cross-complaint of the said appellees, as follows:

"Said defendants, Thomas Scantlin and James M. Scantlin, partners doing business under the name and style of Thomas Scantlin & Son, for answer to said complaint, and for a cross-complaint against said plaintiff, say, that they admit the making and delivering of said mortgage. But they say, that the claim of said plaintiff is junior to these defendants' claim, because, they say, that heretofore, to wit, on the 9th day of July, 1872, defendants Anton and Dorothea executed to these defendants a mortgage upon the same property described in the complaint, a copy of which is filed herewith as part of this answer, as exhibit 'A.'

"And these defendants say, that any claim of plaintiff under this mortgage ought to be postponed to the claim of these defendants, because, they say, that heretofore, to wit, in February, 1871, these defendants were engaged, in the city of Evansville, in the business of selling stoves, under the firm name of Scantlin & Son; and defendant Anton Helbling had erected a new foundry upon the six

lots first mentioned in the complaint, of which he then was, and now is, the owner, with the agreement with the plaintiff, that they, the said Helbling and Brinkmeyer, who had been former partners in the foundry business, would go into the foundry business as partners for the manufacture of stoves, in said foundry. These defendants further aver, that defendant Anton, previous to said last mentioned date, had been, and was, possessed of small capital and limited means, and was owing debts of large amounts, and was financially embarrassed, while the plaintiff was then, and now is, a man of large means, who possessed great influence over said Anton and Dorothea in all business matters; and thereupon, at the date aforesaid, plaintiff refused to go into partnership with said Anton, but, at the request and on the advice of said plaintiff, said Anton sought a partnership with these defendants, who thereupon negotiated with the said Anton, with the view of entering into a partnership with the said Anton in the stove foundry business; and thereupon said plaintiff, pretending to be desirous of assisting said Anton, agreed with these defendants to cancel his mortgage upon said foundry lots, in order that said property might become partnership assets, free from incumbrances, and thereby any money investments made by these defendants in said foundry might be made secure to these defendants. And therefore these defendants became partners with the said Anton, under the firm name of Scantlin, Helbling & Co., and invested large means and money in said foundry, on the faith of said agreement of plaintiff so to cancel his mortgage. And these defendants say, that, on the 1st day of March, 1871, by written articles of partnership, they entered into partnership with said Helbling, as heretofore stated. A copy of said articles of partnership, marked exhibit 'B,' is herewith filed as a part hereof, and the contents of such articles were, at their date, known to plaintiff. And these defendants further aver, that, by the terms of said articles, said foun-

dry and lots, of great value, were, and became, partnership
assets in said firm, and said firm borrowed money for
capital to carry on said business, which became profitable.
But these defendants aver, that in said articles was, and
is, a provision for the appraisement of said lots and their
purchase by these defendants of said Anton; and, at the
times provided in said articles, to wit, about the 1st day
of February, 1872, all the preliminaries therein required
for the purchase aforesaid were completed, and said
lots duly appraised, and these defendants thereupon de-
manded a conveyance under said articles; and said Anton
was thereupon willing to comply with the terms of his
partnership agreement, but thereupon plaintiff persuaded
said Dorothea, the wife of said Anton, to refuse to sign a
deed to these defendants, and she thereupon did refuse to
sign it for said half of said foundry lots; and, by such
intermeddling of plaintiff, said members of said firm were
unable to complete such purchase and sale. And these
defendants say, that, said Helbling being then individu-
ally financially embarrassed, they were compelled, for
their own safety in the matters of said firm, to settle the
affairs of said firm as hereinafter stated, at a sacrifice to
their rights and of money, caused by the inability of said
Anton to comply with the terms of said partnership
agreement, prevented as aforesaid by the intermeddling
of plaintiff. And these defendants aver, that, immedi-
ately previous to the 1st of March, 1872, upon the de-
mand of said defendants, and the consent of said Anton,
for the carrying out of the purchase and sale of said half
of said lots, said lots were, and became, partnership prop-
erty as against the claim of said Brinkmeyer, and were
subject to the payment of the partnership debts of Scant-
lin, Helbling & Co., in priority to the claim of plaintiff.
To carry out the terms of said partnership agreement,
their investments in said foundry, and liability for the
debts of said foundry, which were a large sum, to wit,
nine thousand dollars, rendered it necessary for them, for

their own safety, to immediately dissolve said firm, with the consent of said Anton, to the great injury of its business, and to make a settlement of said firm's affairs, which was then made by them and defendant Anton, in the best manner possible, which final settlement was in writing, a copy of which, marked exhibit ' C,' is herewith filed as a part of this answer.    And these defendants say, that said settlement agreement was afterward carried out, and a portion of the indebtedness of said firm, to wit, the sums of eighteen hundred dollars and two thousand dollars, with interest, was, in consideration of firm assets purchased by said Anton, assumed by said Anton in bank where the same were owing; and, said Anton being without credit, and being unable to give other security to the defendants, they, these defendants, having credit, were compelled to endorse for said Anton for said amounts, taking as their security, at the time, the mortgage heretofore set out.    And these defendants say, that said endorsements were by them afterward renewed from time to time, and said renewals paid upon a note and bill, copies of which are filed herewith, marked ·exhibits ' D ' and ' E.'    These defendants further aver, as to the claim of plaintiff, that, on the 1st day of March, 1871, aforesaid, the claim of plaintiff, under his said mortgage, embraced no sums now due, but that, since that date, after the organization of said firm of Scantlin, Helbling & Co., with knowledge of the facts heretofore stated, plaintiff made endorsements for said Anton till the date and record of these defendants' mortgage, such endorsements and claims being then about twelve hundred dollars, as he avers; and after the date and record of these defendants' mortgage, with full notice of said mortgage and said endorsements by these defendants, plaintiff made a further endorsement under his mortgage for the further sum of two thousand dollars, as he avers.    These defendants further aver, that the mortgage of plaintiff was made before the foundry building and fixtures, with engines,

boilers, and machinery and tools, were placed on said lots, and such property was, by such mortgagors, specifically mortgaged to these defendants, being property of said firm of Scantlin, Helbling & Co., and in them said Brinkmeyer has no claim as against these defendants; wherefore these defendants say, that, inasmuch as said Brinkmeyer induced these defendants, by persuading said Anton and promising to cancel said mortgage, to form said partnership, and inasmuch as he intermeddled in the affairs of said firm, damaging its business, jeopardizing the rights of these defendants, and inasmuch as the rights of the defendants sought to be enforced in priority to plaintiff's claim accrued on the 1st day of March, 1871, prior to the existence of the pretended claim of said Brinkmeyer, the claim of the said Brinkmeyer ought to be postponed to the claim of these defendants.   Wherefore these defendants ask judgment for five thousand dollars, the foreclosure of their mortgage, and the sale of the property described therein; that the proceeds of the sale of the boilers, engines, fans, cupola, fixtures and personal property aforesaid be applied on their claim in exclusion of all of plaintiff's claims, and that these defendants may have all other proper relief."

The mortgage, set out and sued upon in the foregoing answer and cross-complaint, was executed by the appellees Anton Helbling and Dorothea, his wife, to the appellees Thomas and James M. Scantlin, on the 9th day of July, 1872, or more than three and one-half years after the execution of the mortgage sued upon in appellant's complaint.

The appellant moved the court below, in writing, to strike out certain portions of the answer and cross-complaint of the appellees, the Scantlins, which motions were severally overruled, and proper exceptions were saved by the appellant to each of these decisions.   And the appellant then replied by a general denial to the answer and cross-complaint of the Scantlins, and also, in like manner,

to what is called the third paragraph of their answer. We think it unnecessary, however, for us to set out this third paragraph of the answer, as the questions at issue in this court between the appellant and the appellees, the Scantlins, fairly arise on their answer and cross-complaint.

In the second of the above entitled actions, in which the appellees, the Scantlins, were plaintiffs in the court below, the appellant filed a cross-complaint, which contained substantially the same averments as were contained in his complaint, in the first of said actions.

To this cross-complaint of the appellant, the appellee Peter Maier, one of the defendants thereto, answered in three paragraphs, as follows:

First. A general denial.

Second. By way of cross-complaint, said Peter Maier alleged, in substance, that, on the 19th day of January, 1871, one George Bauman recovered a judgment against the appellee Anton Helbling for eleven hundred and seventy-six dollars and seventy-two cents, and costs of suit, at the January term, 1871, of the Vanderburgh Common Pleas Court; that on the 18th day of April, 1871, said George Bauman recovered another judgment against said Anton Helbling for three hundred and two dollars and forty-two cents, and costs of suit, at the April term, 1871, of the court below, and that the appellant had full knowledge of the same; that on the 28th day of August, 1873, executions were duly issued on the said judgments to the sheriff of Vanderburgh county, and were, by said sheriff, levied on six certain lots, particularly described, in the city of Evansville, in said county; that, in pursuance of said levy, the said sheriff, on the 5th day of January, 1874, offered and sold the said six lots to Willard Carpenter, for the sum of four hundred and seventy-two dollars, for which the said sheriff executed a certificate of sale to said Carpenter, who assigned the same to the appellee Peter Maier, who then held a lien on said real estate for said four hundred and seventy-two dollars, by virtue of said

certificate, with ten per cent. interest since said sale; and that his said lien was prior to the lien of his co-appellees and of the appellant. Wherefore said Peter Maier prayed, that his interests might be protected, and that his said claim might be declared a prior lien over the liens of the other parties to this action.

Third.  By way of cross-complaint, the said Peter Maier alleged substantially the same facts he had alleged in his second paragraph, and, in addition thereto, he said, that his said lien had, and of right ought to have, priority over the lien of the appellant, because, he said, the appellant had full knowledge of the said several judgments, after the rendition thereof, and prior to the making of the said several advancements [endorsements?] in his cross-complaint mentioned, after the rendition of said judgments.  Wherefore, etc.

The appellant demurred separately to the second and third paragraphs of said Peter Maier's answer, for the alleged insufficiency of the facts therein to constitute a defence to appellant's cross-complaint; which demurrers were severally overruled by the court below, and to these decisions the appellant excepted.

The appellee Willard Carpenter, by way of answer and cross-complaint to the complaint of the Scantlins and the appellant's said cross-complaint, alleged, in substance, that on the 27th day of September, 1872, he recovered a judg-ment against the appellee Anton Helbling, for six hundred and ninety-six dollars and twenty-three cents and costs of suit, at the September term, 1872, of the Vanderburgh Common Pleas Court; that execution was duly issued on said judgment, and by virtue thereof the sheriff levied on the same six lots, in the city of Evansville, described in Peter Maier's answer; that on the 28th day of June, 1873, the sheriff sold said real estate for the sum of six hundred dollars to said Willard Carpenter, and executed to him a certificate of purchase for said real estate; and that on the — day of ———, 1874, the said sheriff executed

to said Carpenter a conveyance of said real estate. And said Carpenter averred, that, by virtue of said judgment, sale and conveyance, he had a lien on said real estate prior to that of all the parties to this action, except that of the appellee Peter Maier. Wherefore, etc.

The appellant demurred to the answer and cross-complaint of said Willard Carpenter, for the want of sufficient facts therein to constitute a defence to appellant's cross-complaint, which demurrer was overruled, and appellant excepted.

Many other pleadings were filed, and other issues of law and fact arose thereon, in the progress of the two cases, before their consolidation; but we need not set them out in this opinion, as the errors assigned by the appellant in this court do not specially call them in question.

The two actions, having been put at issue, were consolidated and tried as one cause by the court below, and a finding made as before stated, of which finding we give a condensed statement as follows:

1st. Maier has priority over all parties upon the judgment and certificate set up in his answer, and has the oldest lien on lots 8, 9, 10, 11, 12 and 13, in Atkinson's Subdivision of Block 130, and the sum of $508 is due him.

2d. Brinkmeyer has priority on lot No. 14, in Block No. 130.

3d. Said Thomas and James M. Scantlin have priority over Brinkmeyer on lots Nos. 8, 9, 10, 11, 12 and 13, in Block 130, except as to the sum of $584.50, for which Brinkmeyer has a prior lien on said lots.

4th. That there is due Scantlins $4,274.40, which is secured by mortgage on the last mentioned lots.

5th. There is due Brinkmeyer from Helbling $4,191, secured by mortgage on the same lots.

7th. That the sum of $1,200 of the sum found due Brinkmeyer is also secured by mortgage on another piece of property.

8th.   That W. Carpenter has a lien on lots 8, 9, etc., in Block 130, which is junior to the other liens.

The appellant's motion for a new trial having been over-ruled, and his exception saved to such ruling, as before stated, the court below rendered judgment in accordance with its finding, to which judgment the appellant also ex-cepted.

In this court, the appellant has assigned the following alleged errors of the court below:

1st.   In overruling the appellant's motion to strike out certain specified parts of the answer and cross-complaint of the appellees Thomas and James M. Scantlin;

2d.   In overruling the appellant's motion to strike out certain specified parts of the complaint of the appellees Thomas and James M. Scantlin;

3d.   In overruling the appellant's demurrer to the an-swer of the appellee Willard Carpenter;

4th.   In overruling the appellant's demurrer to the second paragraph of the answer of the appellee Peter Maier;

5th.   In overruling the appellant's demurrer to the third paragraph of said Peter Maier's answer;

6th.   In rendering judgment, that, out of the proceeds of the sale of lots 8, 9, 10, 11, 12 and 13, in Atkinson's Subdivision of Block 130, etc., the sum of five hundred and eight dollars should be first paid to said Peter Maier, before paying and satisfying the appellant's mortgage debt.

7th.   In rendering judgment, that, out of the proceeds of the sale of said last described lots, the judgment in favor of said Thomas and James M. Scantlin should be paid before paying the appellant's judgment;

8th.   In overruling the appellant's motion for a new trial;

9th.   The answer and cross-complaint of the appellees Thomas and James M. Scantlin to the appellant's com-plaint did not state facts sufficient to constitute a defence or cause of action, as against the appellant; and,

10th. In rendering judgments in favor of the said Scantlins and of the said Peter Maier severally, on the issues; whereas, on the issues joined, judgment should have been rendered in favor of the appellant.

Before considering the several questions presented by these alleged errors, it is proper for us to say, that the mortgage set out and sued upon in appellant's complaint is the same mortgage which was the subject-matter of the suit of *Brinkmeyer* v. *Browneller*, 55 Ind. 487.

In the case cited, it was held by this court, as applicable to said mortgage, that " Where the mortgagee has bound himself to make advances or incur liabilities, such advances, when made, shall relate back, and the mortgage will be a valid lien for advances made or liabilities incurred, against subsequent purchasers or incumbrancers with notice, actual or constructive, of the mortgage." And it was further held, that " there was an ample and valid consideration " for the appellant's agreement to endorse for said Anton Helbling, " appearing on the face of the transaction;" and that, as against such purchasers or incumbrancers, with notice as aforesaid, the appellant had a lien on the mortgaged property, " by virtue of the mortgage, as an indemnity or security for whatever he may have paid, or for whatever he may be liable, on his endorsements for Helbling."

Keeping in mind this judicial construction of the mortgage sued upon by the appellant, we pass now to the consideration of the questions presented by the alleged errors of the court below, assigned by the appellant on the record of this action.

The first two of these alleged errors may properly be considered together, as in each of them the appellant has complained of certain decisions of the court below in overruling his motions to strike out certain specified parts of certain pleadings of the appellees, the Scantlins. There are several reasons why these two alleged errors, even

if they in fact existed, would not be available to the appellant in this court.

In the first place, the appellant has failed to assign, in either of his motions to strike out, any cause or reason whatever why the same should be sustained. *Lucas* v. *Smith*, 54 Ind. 530. And besides, this court has often decided, that the decisions of the lower court, in overruling motions to strike out parts of pleadings, however erroneous they may be, will constitute no available error in this court. *Hutts* v. *Hutts*, 51 Ind. 581, and *House* v. *McKinney*, 54 Ind. 240.

The third alleged error of the court below, complained of by the appellant, was the overruling of his demurrer to the answer of the appellee Willard Carpenter. This answer, on its face, was intended to be both an answer to appellant's cross-complaint, and a cross-complaint of said Carpenter against the appellant and the other parties to this action. Whether it is considered as an answer, or as a cross-complaint, it is very certain, we think, that it did not state facts sufficient to constitute either a defence to appellant's action, or a cause of action against the appellant. It stated merely the naked fact, that the appellee Carpenter had obtained a sheriff's deed to a part of the property described in appellant's mortgage, under a judgment rendered against the mortgagor Anton Helbling, on the 27th day of September, 1872, nearly four years after the execution of said mortgage; and then it alleged, that, by virtue of said judgment, sale and deed, he, said Carpenter, had a lien on said property, prior to the lien of appellant's mortgage. How or why this was so, the answer failed to show by the proper averment of any fact or facts; and, therefore, we hold that the court below erred in overruling the appellant's demurrer to said Carpenter's answer or cross-complaint.

The fourth and fifth errors, assigned by appellant, call in question the decisions of the court below in overruling the appellant's demurrers to the second and third para-

graphs of the answer of the appellee Peter Maier to the appellant's cross-complaint.   These two paragraphs contain substantially the same averments, and each of them, on its face, was both an answer and a cross-complaint. In our opinion, however, neither of these paragraphs stated facts sufficient to constitute either a defence to appellant's action, or a cause of action against the appellant. The facts stated by said Peter Maier, in each of the said paragraphs, were simply these :  That, under two certain judgments, rendered against the mortgagor Anton Helbling, one on the 19th day of January, 1871, and the other on the 18th day of April, 1871, more than two years after the execution of said mortgage to the appellant, and executions issued on said judgments, a part of the mortgaged property had been sold by the sheriff, and a certificate of said sale executed by him, of which certificate the appellee Peter Maier was then the owner and holder; and that the appellant had full knowledge of said judgments, after the rendition thereof and before he made the said several advancements, in his cross-complaint mentioned.

Under our construction of the appellant's mortgage, in the case of *Brinkmeyer* v. *Browneller, supra,* and we still adhere to that construction, the appellant was bound, and could be compelled, to endorse for, or become the surety of, the appellee Anton Helbling, " for an amount not to exceed four thousand dollars."   The fact that judgments had been rendered against said Anton Helbling would not absolve the appellant from this obligation; and, therefore, his knowledge of such fact, before he made advancements to, or incurred liabilities for, said Anton Helbling, could not, and would not, under the law, affect his rights under his mortgage.   In such a case as this, the law is well settled, that the appellant had the right to hold his mortgage as a " security for future advances and responsibilities," and that his future advances, and liabilities incurred, would be covered by the lien of his mortgage, in prefer-

ence to the claims of junior intervening purchasers or encumbrancers with notice, actual or constructive, of his said mortgage. 4 Kent Com. 176; *Truscott* v. *King*, 6 N. Y. 147; *Ladue* v. *The D. & M. Railroad Co.*, 13 Mich. 380; and see 11 Am. Law Reg., N. S., p. 273, and authorities there cited.

Appellee Peter Maier did not aver, in either of the said paragraphs of his answer, a want of notice, actual or constructive, of appellant's said mortgage; and, in the absence of any such averment, it seems to us, that the court below erred in overruling the appellant's demurrers to each of the said paragraphs of Peter Maier's answer.

From what we have said in relation to the fourth and fifth alleged errors, assigned by the appellant, it necessarily follows, that, in our opinion, his sixth alleged error was also well assigned. For, if the second and third paragraphs of Peter Maier's answer were insufficient to entitle him to the relief asked for therein, it is clear that the court below erred in finding that the claim of said Maier, for the sum of five hundred and eight dollars, was entitled to priority over the appellant's mortgage debt, and in rendering judgment accordingly. Under the law, as we have already seen, the liabilities incurred by the appellant for the mortgagor Anton Helbling, relate back to the date of the execution of the mortgage to the appellant, and he has a valid lien therefor, although such liabilities were incurred by him after he had notice of a subsequent mortgage or judgment lien on the same property. The subject-matter of this sixth alleged error was properly assignable as a cause for a new trial, in the appellant's motion therefor, addressed to the court below, and was so assigned, in said motion, as the third cause for such new trial; but we have preferred to consider the questions thereby presented in this connection.

We hold, that the court below erred in its finding, that the appellee Peter Maier was entitled to any priority

Brinkmeyer *v.* Helbling *et al.*

over the appellant, and in rendering judgment accordingly.

The construction we have given to the mortgage sued upon by the appellant renders it unnecessary, in our opinion, that we should examine and consider in detail the other alleged errors, assigned by the appellant on the record of this cause. This mortgage, it appears, was duly recorded in the recorder's office of said Vanderburgh county, on the next day after it was executed, to wit, December 30th, 1868. We must hold, therefore, that the appellees, the Scantlins included, had at least constructive notice of the appellant's mortgage, long before they acquired any lien upon the said mortgaged property, or any part thereof.

In their answer and cross-complaint, the appellees, the Scantlins, alleged, among other reasons why their claim against the mortgagor Anton Helbling, should have priority over the claim of the appellant, the following facts, to wit:

" These defendants further aver, as to the claim of the plaintiff, that on the 1st day of March, 1871, aforesaid, the claim of plaintiff, under his said mortgage, embraced no sums now due, but that, since that date, after the organization of said firm of Scantlin, Helbling & Co., with knowledge of the facts heretofore stated, plaintiff made endorsements for said Anton, till the date and record of these defendant's mortgage, such endorsements and claims being then about twelve hundred dollars, as he avers; and, after the date and record of these defendants' mortgage, with full notice of said mortgage and said endorsements by these defendants, plaintiff made a further endorsement, under his mortgage, for the further sum of two thousand dollars, as he avers."

The theory of this allegation manifestly was, that, inasmuch as the appellant made his endorsements for the mortgagor Anton Helbling after he had notice of the

equitable interest of the Scantlins in the mortgaged property, therefore the claims of the appellant to indemnity, under his mortgage, should be subordinated or postponed to the claims of the Scantlins, under their junior mortgage.

This theory, in our opinion, is in direct contravention of our construction of the appellant's mortgage, and of the law applicable thereto. And yet it seems very clear to us, from the findings and decisions of the court below in this cause, that it was tried and determined in accordance with this theory. For, although the answer and cross-complaint of the Scantlins contained certain other averments, the evident object of which was to establish an equitable estoppel in favor of the Scantlins and against the appellant, it is clear, we think, from the findings of the court below, that there was no finding of any such estoppel. And besides, the finding of the court in favor of the appellee Peter Maier, giving his claim priority over the claim of the appellant, shows very conclusively to our minds, that this cause was tried and determined on the theory above suggested; for in Maier's case there was no pretence of any estoppel, or any other reason for the priority of his claim over that of the appellant, except that the appellant made his endorsements for the mortgagor Anton Helbling after he had notice of the judgment against said Helbling, under which the said Peter Maier derived his claim

Without any further or special examination of the alleged errors, assigned by the appellant, it seems clear to us, that the findings of the court below, in this cause, were contrary to law; and, for this reason, we hold that the court erred in overruling the appellant's motion for a new trial.

The judgment of the court below is reversed, at the costs of the appellees, and the cause is remanded, with instructions to sustain the appellant's demurrers to the

answer of Willard Carpenter, and to the second and third paragraphs of Peter Maier's answer, and for a new trial and further proceedings, in accordance with this opinion.